### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 13-00562-TLM |
| JUDI L. KIEFFER, ) | |
| ) | Chapter 13 |
| Debtor. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION**

_____

Before the Court is the motion of chapter 13 trustee, Kathleen McCallister ("Trustee"), to dismiss this case.[1] Doc. No. 84 ("Motion"). Though not expressly stated in the Motion, it is brought under § 1307(c) for "cause" and, as became evident at hearing, more particularly under § 1307(c)(6) for a "material default by the debtor with respect to a term of a confirmed plan." Debtor Judi Kieffer opposes the Motion, and the matter was presented at an evidentiary hearing on November 17, 2015. This Decision constitutes the Court findings and conclusions on the contested matter. Rules 7052, 9014.

Debtor is an interior designer. She practices this profession through a wholly-owned subchapter S corporation, Kieffer Design Group, Inc. ("KDG"). While KDG has varied in size over the years since it was formed, as a result

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11, U.S. Code §§ 101–1532, and rule references are to the Federal Rules of Bankruptcy Procedure.

MEMORANDUM OF DECISION - 1

primarily of economic and business forces, there are presently five employees including Debtor. Debtor is the lowest paid of the employees. As reflected by her filed schedules, and as contemplated by her confirmed chapter 13 plan, Debtor receives $3,000 per month in wages and $1,000 per month as a dividend drawn from KDG.

Debtor also owns two other business entities. One is Kieffer Enterprises, LLC ("KE") and the other is Hidden Acre Enterprises, LLC ("HA"). Debtor personally owns three parcels of real property—her residence, a rental house and a downtown Boise business property. Upon legal and financial advice, she formed KE to manage the business property which she rents to KDG, and HA to manage the rental of the house which is close to her residence. Neither KE nor HA is designed to generate a profit or income, though HA did produce a $100 per month net contribution to Debtor's overall budget at the time the case was filed and at the time of confirmation. However, that small income has since evaporated given the loss of a long-term tenant of that house, and a septic tank issue necessitating a costly connection to city sewer.[2]

The closely-held entities, particularly KDG, are at the root of Trustee's Motion.

---

[2] Debtor's budget also incorporated $400.00 per month from rent paid by a roommate, which contribution continues, and a $433.85 per month benefit from NOVA Trust, which ceased in April 2015.

MEMORANDUM OF DECISION - 2

Debtor filed her petition on March 26, 2013, and her plan, Doc. No. 37, was confirmed on December 20, 2013. Doc. No. 54 ("Order"). When the plan was confirmed, certain non-standard provisions were included in the Order. The ones at issue stated:

> D. The Debtor shall provide yearly proof of her business income and expenses to the Trustee each and every June for the remainder of the term of the plan. Proof of business income and expenses shall include (1) a profit and loss statement covering twelve calendar months, (2) matching bank statements for the same period of time, and (3) a check register or other detailed transaction report.
>
> E. Debtor shall file amended schedules I and J within 30 days (1) if she has a change in income that results in a gross increase of 10% or more of her current gross income as reflected on her most recently filed Schedule I; (2) if Debtor receives income from any other source than those listed on her most recently filed Schedule I; or (3) if she marries. The Debtor shall provide proof of the same to the Trustee's office.

Doc. No. 54 at 2–3.

Despite argument at hearing over a number of aspects of this case, including several prior disputes between Trustee and Debtor's counsel, the focus narrows to paragraph E, because the record establishes that Debtor has provided the profit and loss statements required under paragraph D. Exs. 105–116.[3]

Trustee, in reviewing Debtor's tax returns for 2013 and 2014 concluded that Debtor had "income" from KDG in excess of the $4,000/month the schedules

---

[3] The third condition in paragraph E, Debtor marrying, is not at issue.

MEMORANDUM OF DECISION - 3

and plan contemplated, and that such additional income exceeded the 10% threshold of paragraph E.[4]

One approach to issues such as those involved here would be for the parties to meet and discuss the situation. Trustee could gain additional information and verify details, and Debtor could explain the facts relevant to the businesses not readily evident from tax returns or financial statements. Positions could be clarified and, perhaps, a consensual modification of the plan negotiated, allowing for increased draws or dividends to Debtor and increased payments into the plan in amounts if the same would not jeopardize the viability of the entity generating the income. But the record is replete with indications that Trustee and Debtor's counsel could not accomplish this mutually beneficial, less adversarial, approach.

Trustee instead filed her Motion. That choice, while within her prerogative, was emblematic of the parties' prior approaches to their disputes, and it made the positions taken by them more rigid and their approach to litigation more combative.

But while such matters colored the manner and tone of presentation, the issue before the Court is one of fact and law.

Trustee's Motion requests an order of dismissal. As the hearing made

---

[4] Trustee's Motion actually objects on the basis that Debtor drew a $1,000 dividend from KDG in addition to wages, and that this was "additional" income. This is clearly in error, as the $1,000 dividend was at all relevant times disclosed in the process of confirming the plan.

MEMORANDUM OF DECISION - 4

clear, Trustee relies on the proposition that KDG generated income following confirmation and especially in 2014, as shown on its tax returns, which was income attributable for tax purposes to Debtor. While Debtor withdrew from KDG only the monthly $3,000 in wages and $1,000 in dividend, Trustee credits Debtor with this additional KDG income. Believing that such additional income exceeded 10% of Debtor's gross income as of confirmation, Trustee argues that paragraph E required an amended schedule I and J be filed "within 30 days."[5] The Motion is based, fundamentally, on viewing the failure of Debtor to timely file an amended schedule as constituting a violation (or "material default") of the Order.

In *In re Champ*, 2013 WL 4463019 (Bankr. D. Idaho Aug. 19, 2013), the Court considered a motion of Trustee to dismiss a chapter 13 case based on alleged failure of debtors to comply with a provision of the confirmation order requiring an amended schedule I if Social Security benefits were awarded. As is the situation here, Trustee's motion in *Champ* lacked citation to any statutory or case authority, and the Court concluded the motion was brought under § 1307(c) and, in particular, § 1307(c)(6) which allows for dismissal where there has been a material default with respect to a confirmed plan. *Id.* at *3.

---

[5] Problems are created not only by paragraph E's rather ambiguous references to "gross increases" and "gross income" but also its lack of clarity as to when the 30 day period for amendment of schedules commences. In discovery, Trustee took the position that the amendment should have been made by January 31, 2014, apparently calculating 30 days in reference to tax returns as of December 31, 2013. *See* Ex. 121 at 5. The returns were not prepared and filed until April 2014. *See* Ex. 102.

MEMORANDUM OF DECISION - 5

*Champ* held that it was Trustee's burden to demonstrate sufficient cause to dismiss the case under § 1307(c). "Thus, Trustee must prove that Debtors materially defaulted under the terms of their plan[.] In addition, even if Trustee shows that cause to dismiss exists, she must also demonstrate that dismissal of Debtors' case is in the best interests of their creditors and the bankruptcy estate." *Id.* (citing *Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 675 (9th Cir. BAP 2006); other citations omitted).[6] The Court continued:

> Moreover, even if a material breach of the confirmed plan is shown to have occurred, Congress employed the term "may" in drafting § 1307(c), rather than the obligatory "shall," thus granting the Court discretion in deciding whether to dismiss. *Sievers v. Green (In re Green)*, 64 B.R. 530, 530–31 (9th Cir. BAP 1986) ("An analysis of the language of Section 1307(c) leads to the inevitable conclusion that the decision to dismiss a Chapter 13 is a *discretionary decision* of the trial court.") (emphasis in original); *In re Cluff*, 2012 WL 1552391, at *6 (Bankr. D. Idaho April 30, 2012) ("The Code gives a bankruptcy court discretion to dismiss a case pursuant to § 1307(c) or not."); *In re Hill*, 374 B.R. 745, 749 (Bankr. S.D. Cal. 2007).

*Id.* The Court ultimately determined that while the debtors failed to comply with the order, the Code vested it with discretion to decide whether that failure justified dismissal of the case and held, "[a]ll things considered, the Court declines to dismiss Debtors' case." *Id.* at *4.[7]

---

[6] *Nelson* emphasized that § 1307(c) imposes a two-step requirement: first to determine if cause is shown and, second, to weigh the alternatives of conversion or dismissal based on the "best interests of creditors and the estate." 343 B.R. at 673–75.

[7] *See also In re Cluff*, 2012 WL 1552391 (Bankr. D. Idaho Apr. 30, 2012) (trustee failed to establish § 1307(c) cause on grounds of bad faith, but did establish cause under § 1307(c)(6)
(continued...)

MEMORANDUM OF DECISION - 6

The burden on Trustee under the authorities is an evidentiary one. Here, testimony was taken from Debtor and from Trustee's staff attorney. Exhibits were admitted by stipulation. The Court has considered the entirety of that evidence, and its record. From it, the Court finds that Trustee has failed to establish a material breach under § 1307(c)(6). The problem lies, initially, with the language of paragraph E. As relevant here, it predicates the requirement of filing an amended schedule on one of two things. First, she must amend "if *she* [Debtor] has a change in income that results in a gross increase of 10% or more of *her* current gross income *as reflected on her most recently filed Schedule I*." (emphasis added). Second, she must amend if she "receives income from any other source than those listed on her most recently filed Schedule I[.]"

The Court concludes that the second of these conditions is not established at all. Debtor was not shown to have received income "from a source" other than those disclosed in her prior schedule I, which projected income from specific "sources" including KDG wages, KDG dividend, HA net rent income, the roommate contribution, and a NOVA trust benefit. Ex. 201 at 22. No other additional sources were identified by Trustee.

In regard to the first of the paragraph's conditions, a change in gross

---

[7](...continued)
on basis of material default of confirmation order, but in its discretion, and considering best interests of creditors, Court declined to dismiss case).

MEMORANDUM OF DECISION - 7

income of more than 10%, Trustee focuses on Debtor's tax returns. *See* Ex. 206 (2013 return) and Ex. 208 (2014 return). They show her KDG wages were paid in amounts consistent with prior schedules and the Order. They also show aggregate non-wage income of $32,731 in 2013 and $34,121 in 2014. Ex. 206 at 1, line 17 (rental real estate, royalties, partnerships, S corporations, trusts, etc.); Ex. 208 at 5 (same).[8] Debtor does not dispute that this is taxable income to her. But she disagrees that this reflects *her* actual income, instead characterizing it as "KDG's income."

The language of the Order is not well suited to the task. KDG has "gross receipts or sales" as well as, after deduction of costs of goods sold, "total income." Exs. 207, 209. KDG's "ordinary business income" is then calculated, and is attributable to Debtor for tax purposes. Ex. 207 at 7 (2013 K-1); Ex. 209 at 7 (2014 K-1). Perhaps Trustee contemplated that the requirement of an amended schedule I would be based on income generated by and through KDG—even though Debtor, for reasonable business purposes might elect to retain funds in KDG to support its operations (*i.e.*, taxable but undrawn KDG gross sales, total income, or ordinary business income). If so, it was not sufficiently made clear in

---

[8] In both years, the effective net "rental income" that would relate to KE and HA attributable to Debtor for tax purposes was negative (net loss), and the positive aggregate amount therefore derives from KDG's operational income. Exs. 206, 208.

MEMORANDUM OF DECISION - 8

the Order.[9]

Debtor, of course, makes much of the distinction between "Debtor's income" and "KDG's income." But overemphasizing this point ignores the reality that all of this Debtor's income (save a roommate contribution and, for awhile, the NOVA benefit) comes from and through the S corporation and the two LLC's. There is little utility to the Order's requirements of profit and loss statements and other financial documents, and complete tax returns, unless the ability of Debtor to earn her living through these entities was important; it certainly should and would be considered at confirmation and during the term of the plan. After all, Debtor's sufficiently stable and regular income required to propose and confirm a chapter 13 plan, *see* §§ 101(30), 109(e), comes almost entirely through the entities Debtor elected to form. Trustee should be and is entitled to inquire of Debtor throughout the duration of the case about the financial performance of the entities in order to determine whether reasonably available income could be drawn to support Debtor and to benefit her chapter 13 plan creditors, and to ensure that such available income is not instead inappropriately hoarded within the entities.

---

[9] In attempting to prove that Debtor's income for purposes of the Order was inclusive of this KDG ordinary business income, Trustee relied on her staff attorney's testimony. That witness, however, was not established as competent to render an opinion on the issue. *See* Fed. R. Evid. 702; *cf.* Fed. R. Evid 701. And this witness' testimony that was specifically based on her consultation with (and which attempted to convey the conclusions of) a tax accountant was impermissible hearsay, *see* Fed. R. Evid. 801, 802, and disregarded by the Court. While the witness may have had helpful testimony to offer, given that she was involved in the analysis of Debtor's documents and the preparation and filing of the Motion, the excessively leading nature of Trustee's questioning negated it.

MEMORANDUM OF DECISION - 9

However, given the imprecise language of paragraph E, and considering the totality of the evidence presented, the Court concludes Trustee has failed to establish a "material default" of the Order by a preponderance of the evidence, and has failed to establish cause for dismissal or conversion under § 1307(c)(6). Moreover, were cause to be shown, the Court in its discretion, and considering the best interests of creditors and the estate, would decline to dismiss the case on this Motion.  *See*, *e.g.*, *In re Cluff*, 2012 WL 1552391, at *6.

The Motion will be denied.  A separate order will be entered.

DATED: November 23, 2015

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 10